**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tomasena Powell, | No. CV-23-01274-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Transdev Alternative Service Incorporated, | |
| Defendant. | |

Plaintiff Tomasena Powell previously worked as a driver for defendant Transdev Alternative Service Inc. ("Transdev"). Powell filed this suit alleging she was subject to employment discrimination based on her sex or race and retaliation after complaining about discriminatory behavior. Transdev moves for summary judgment on all claims. The motion is granted.

**I.   Background**

Powell is a Black woman who began working for Transdev as a driver in January 2020. (Doc. 44-3 at 4.) Transdev provides employee and management services for Waymo (an autonomous driving company) in Arizona. (Doc. 44 at 2.) Powell claims Transdev discriminated against her on the basis of sex and race in violation of Title VII and the Arizona Civil Rights Act ("ACRA"), and retaliated against her in violation of Title VII and the Arizona Employment Protection Act ("AEPA"). (Doc. 1 at 4–6.)[1]

---

[1] Powell's opposition to the motion for summary judgment is difficult to understand and was accompanied by very little evidence. Its lack of clarity means the factual bases for Powell's claims are not entirely clear. Although referring to a complaint is usually inappropriate at the summary judgment stage, the court has no other source for identifying

As for the discrimination based on her sex and race, Powell claims (1) she was denied a relocation package offered to employees willing to relocate to Texas which two male employees with less seniority received; (2) she was denied a special training in July 2021 which white male employees with less seniority received; and (3) Transdev gave preferential treatment regarding scheduling to less senior truck drivers outside her protected class. (Doc. 1 at 3, 4). Powell also claims she was disciplined and eventually terminated in retaliation for making complaints to human resources when an employee said Powell wanted to "get tea bagged" and when a comedy special in which the comedian spoke about race and his penis was played on a breakroom television. (Doc. 1 at 4.)

### A. Texas Relocation

In March 2021, Transdev offered employees the opportunity to relocate to Dallas, Texas, with a relocation stipend of $10,000. (Doc. 44-4 at 13.) Powell told her second-level manager Joseph Skelton she was interested in relocating. (Doc. 44-4 at 11, 13–14.) Four or five other employees also expressed interest. (Doc. 44-4 at 22.) Powell went on a three-week "exploratory" trip to Dallas to see if she liked it. (Doc. 44-14 at 3.) After the trip, Skelton did not recall Powell committing to the relocation like other drivers did, although Powell claims she did commit. (Doc. 44-14 at 2–3.) Her supervisor at the time, Shadrach Relf, also recalled she originally wanted to move to Texas but later changed her mind. (Doc. 44-5 at 41.)

Powell filed a complaint with human resources ("HR") regarding the incident and they determined "there may have been failed communication regarding th[e] transfer." (Doc. 44-13 at 3.) But HR's report on the situation—which Powell received—also mentioned HR believed she was no longer interested in the transfer and instructed her to let HR know if she was. (Doc. 44-13 at 3.) Powell does not contend she remained interested in the transfer. (*See* Doc. 45.) Powell appears to claim she was discriminated against based

---

some of the basic outlines of Powell's claims. The truth of the complaint's allegations, however, is not assumed. *See Butler v. San Diego Dist. Attorney's Off.*, 370 F.3d 956, 963 (9th Cir. 2004) (when a defendant "has produced enough evidence to require the plaintiff to go beyond [her] pleadings . . . the district court is not required (or even allowed) to assume that the challenged factual allegations in the plaintiff's complaint are true").

on her sex because two male employees with less seniority were awarded the relocation. (Docs. 1 at 3, 45 at 6.)

### B. Special Training

In mid-2021, Transdev offered drivers a "special assignment" to travel to Ohio to perform training on a test track. (Doc. 44-4 at 25–26; *see also* Doc. 44 at 6.) Powell alleges she requested the assignment and was denied. (Doc. 1 at 3.) Powell claimed in her deposition that she saw a text message between Skelton and another employee, Arthur Najera, which said she was not suited for the assignment "because she [i]s black." (Doc. 44-2 at 124.) Powell testified Najera showed her the text message on his phone, but she did not report seeing the text message until after this litigation began.[2] (Doc. 44-2 at 125.) While still employed at Transdev, Powell complained to HR and asked why other drivers were placed into the program. (Doc. 1 at 3; *see also* Doc. 4-2 at 123.) Powell appears to argue she was originally denied the assignment based on her race and sex. (Doc. 1 at 3.) But she acknowledges she was eventually offered the special assignment and paid additional overtime for it. (Doc. 44-2 at 123.)

### C. Scheduling

In December 2021, Powell and other drivers bid on new schedules they wanted. (Doc. 44-2 at 133.) She claims Transdev "gave preferential treatment with the schedule to less senior Truck Drivers who are outside of her protected class." (Doc. 1 at 4.) Powell informed her supervisor, management, and HR that she did not get the schedule she wanted. (Doc. 44-2 at 135.) But she acknowledged in her deposition that she was on vacation when the new schedules were released and that she received her desired schedule by the time she came back from vacation and retained it until she was fired. (Doc. 44-2 at 133–34.)

---

[2] Seemingly attempting to explain why she does not have evidence of the text message, Powell claims to have repeatedly requested emails between Najera and Skelton but Transdev's counsel did not provide any. (Doc. 45 at 7.) That does not explain anything, however, because Powell claims the communication at issue was sent via text message, not email. (Docs. 44-2 at 125, 45 at 7.)

- 3 -

### D. Inappropriate Comment

In August 2021, Powell reported a coworker to Skelton for telling her she wanted to "get tea bagged." (Docs. 44-4 at 44, 44-15 at 2.) Skelton immediately sent the complaint to HR. (Doc. 44-4 at 44.) He also placed the employee on leave. (Doc. 44-4 at 45.) Transdev conducted an investigation and the employee was fired. (Doc. 44-4 at 45.) Powell said she was satisfied with Transdev's handling of the situation. (Doc. 44-2 at 128–29.)

### E. Inappropriate Breakroom Television Content

In February 2022, Powell complained about a comedy special playing on the breakroom television in which the comedian made inappropriate racial and sexual jokes. (Doc. 44-16 at 2.) Human resources investigated the matter (Doc. 44-16 at 4–8), communicated the results to Powell, and told her the behavior would not be tolerated and the individuals involved would be coached (Doc. 44-9 at 4). Transdev also alerted all employees it had updated its policies to allow the television to be used only for work-related purposes. (Doc. 44-16 at 9.) Powell agreed Transdev adequately investigated the incident and took the appropriate action. (Doc. 44-2 at 142–43.)

### F. Disciplinary Actions

Transdev's Corrective Action Policy "establishes guidelines for employee conduct, outlines its progressive discipline process, and specifies the consequences for violating company policies." (Doc. 44 at 3.) Transdev claims it fired Powell "after she received seven disciplinary actions in less than four months and refused [its] efforts to remediate her performance." (Doc. 44 at 2.) Transdev refers to disciplinary actions as Records of Discussions ("ROD"). (Doc. 44-6 at 52.)

Around when Powell started receiving more RODs, the number of RODs increased for all employees because of a turnover in leadership. (Doc. 44-6 at 52.) RODs can lead to "points" being deducted from an employee's record and an employee who is deducted more than ten points is subject to termination.[3] Powell's disciplinary actions resulted in an eleven-and-a-half-point deduction before she was terminated. (Docs. 44-8 at 4, 44-9 at 5.)

---

[3] Transdev does not provide a citation for this policy, but its existence is undisputed.

- 4 -

On May 26, 2022, Transdev issued Powell an ROD for being tardy twice. (Doc. 44-17 at 2.) It did not deduct points for this ROD because employees are given leniency on their first violation. (Doc. 44-6 at 51.) Powell does not dispute the facts underlying this ROD. (Doc. 45 at 8.)

On June 15, 2022, Transdev deducted three points from Powell: two for insubordination and one for "using the facility communication systems inappropriately." (Doc. 44-18 at 2.) Powell had refused to drive her assigned truck because it had a small windshield crack despite being reassured the crack was not spreading and the truck was safe to drive. (Doc. 44-18 at 3.) Powell disputes the issuing of this ROD because she claims the truck was not safe to drive (Doc. 44-2 at 153), but a Transdev operator inspected the crack, reviewed the Department of Transportation regulations on windshield cracks, and assured Powell the crack was not in violation of the regulations and was safe to drive (Doc. 44-18 at 8).

On July 12, 2022, Powell was deducted one point for not responding to her manager within fifteen minutes. (Doc. 44-19 at 2.) That same morning, a white male was issued an ROD for not responding to his manager within fifteen minutes. (Doc. 44-6 at 60–61.) Powell believed she missed the message because she was probably out to lunch at the time (Doc. 44-2 at 171–72), but records confirm she was not out to lunch (Doc. 44-19 at 3). Powell did not dispute the ROD in writing when it was issued (Doc. 44-2 at 172), but now disputes she violated policy. (Doc. 45 at 9 (citing Doc. 44-2 at 170).)

On July 18, 2022, Powell was issued an ROD for "[n]ot reaching out to dispatch regarding troubleshooting issues, delaying her return to depot without any notice to dispatch or management" and thereby "causing a delay in [afternoon] shift start up." (Doc. 44-20 at 2.) She was deducted one point for not complying with communication policies and one point for causing a delay in the afternoon shift start up. (Doc. 44-20 at 2.) Powell disputes that she did not reach out to dispatch regarding the troubleshooting issues (Doc. 44-2 at 177), but acknowledges she was 45 minutes late returning to the depot which caused a delay in the afternoon shift start up (Doc. 44-2 at 178). One of Powell's supervisors,

Abigail Rivera, testified that other drivers would receive a point deduction for similar conduct. (Doc. 44-6 at 8—81.)

On July 26, 2022, Powell had a meeting to address her unsatisfactory work performance, recent policy violations, and steps for improvement. (Doc. 44-9 at 6.) Before the meeting, she was provided with her personnel file that showed she was underperforming and only had four remaining points before she was subject to termination. (Docs. 44-2 at 191, 44-21 at 2.) Powell disputed her employment record at the meeting (Doc. 44-2 at 191), and her performance did not improve (Doc. 44-9 at 6).

On July 28, 2022, Powell was deducted a point-and-a-half for using a facility communications system inappropriately for the second time. (Doc. 44-2 at 2.) She was also suspended for the violation. (Doc. 44-2 at 2.) Powell had sent an inappropriate message in a thread with a client that poked fun at Transdev's point deduction system. (Docs. 44-2 194, 44-6 at 63, 44-22 at 2.) Powell claimed to have sent the message in the thread by accident—meaning instead to send it directly to a coworker—and she acknowledged she knew she would be reprimanded for it because she was already in hot water. (Doc. 44-22 at 4.) She now claims she did nothing wrong. (Doc. 44-2 at 195–96.)

On August 15, 2022, Transdev issued Powell an ROD for not following attendance policies after untimely alerting them that she was running late for work. (Doc. 44-23 at 2.) She was deducted one point and informed that "[w]ith this deduction, you have 1.5 points remaining." (Doc. 44-23 at 2.) Powell does not dispute this ROD. (Doc. 45 at 9.)

On September 6, 2022, Transdev issued Powell an ROD for her second failure to follow troubleshooting procedures and for not completing her assigned mission. (Doc. 44-24 at 3.) She was deducted a total of three points for these actions and was told in writing she was subject to termination because her point balance was at negative one-and-a-half. (Doc. 44-24 at 3.) Powell testified she did follow the troubleshooting procedures and did complete her assigned mission. (Doc. 44-2 at 206–07.) But her supervisor had previously determined Powell was untruthful about her compliance with the troubleshooting policies. (Doc. 44-6 at 65.) That untruthfulness, according to the supervisor, was "grounds alone for

term[ination]." (Doc. 44-24 at 4.)

Allegedly as a result of these violations—which resulted in a negative point balance—and Powell's failure to improve after the July 2022 performance meeting, Powell was fired on September 8, 2022. (Doc. 44-25 at 2–3.) Transdev provided Powell a detailed explanation of her violations and lack of performance improvement in her termination letter. (Doc. 44-25 at 2–3.) Powell acknowledged more than ten points were taken away from her which could result in termination and joked she "must have broke[n] a record with these points." (Doc. 44-2 at 212.)

Rivera testified the number of disciplinary actions Powell incurred in a four-month period is not typical for a Transdev employee. (Doc. 44-6 at 67.) Rivera also testified a white male employee who accumulated a similar number of RODs was also terminated. (Doc. 44-6 at 68.) Powell contends the reasons for her termination were pretextual. (Doc. 45 at 10.) She appears to believe she was fired for her complaints to HR regarding the tea bag comment and the comedy special (*see* Docs. 1, 45) as well as filing a second EEOC complaint 21 days before she was fired (Doc. 45 at 10–11, 23–24).[4]

## II. Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movants (here the defendants) bear the burden of presenting the basis for their motion and identifying evidence they believe demonstrates the absence of a genuine issue of material fact. *Id.* at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[4] Powell filed three Equal Employment Opportunity Commission ("EEOC") complaints: one in February 2022, one in August 2022, and one in May 2023. (Doc. 45 at 21, 24, 26.) She does not appear to base her discrimination or retaliation claims on the filing of the February 2022 complaint and the May 2023 one was filed after she was terminated. Only the August 2022 complaint is at issue.

### III. Analysis

Powell provides scant evidence to counter Transdev's motion for summary judgment. Based on Powell's lack of evidence, the court must rely almost entirely on the evidence provided by Transdev. *See Brit. Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("A party opposing a motion for summary judgment must introduce sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial.") (simplified); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Rule 56(e) provi[des] that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.") (citation and quotation marks omitted).

#### A. Sex and Race Discrimination Claims

Powell brings various sex and race discrimination claims under Title VII and the ACRA. The ACRA and Title VII are "generally identical," so the Title VII analysis applies to the ACRA. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004).

Title VII forbids discrimination by employers "because of" an individual's race or sex. 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie disparate treatment case under Title VII, a plaintiff must offer proof that: (1) she belongs to a class of persons protected by Title VII; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated her differently than a similarly-situated employee outside of her same protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Powell's sex and race discrimination claims will be evaluated together because she does not clearly distinguish when she believes she was treated differently based on her race and when she believes she was treated differently based on her sex. (*See* Docs. 1, 45.)

If a plaintiff succeeds in establishing a prima facie Title VII discrimination claim, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640

(9th Cir. 2003), *as amended* (Jan. 2, 2004). "If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination." *Id.* (citation omitted).

Even assuming Powell could make out a prima facie case for race and sex discrimination, she has not established Transdev's articulated non-discriminatory reason for firing her was pretextual. Her Title VII and ACRA discrimination claims therefore fail and summary judgment is granted for Transdev. *See id.* at 641, 646 (assuming a Title VII plaintiff made out a prima facie case and affirming the grant of summary judgment because he could not show pretext); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062–63 (9th Cir. 2002) (same).

Transdev proffered a legitimate, non-discriminatory reason for its decision to terminate Powell: She received seven RODs in four months and was deducted eleven-and-a-half points, more than the ten needed to warrant termination. Powell cites two pieces of evidence suggesting she might have been discriminated against, which the court construes here as her attempt to raise an argument for pretext.

First, Relf—one of Powell's supervisors from approximately March 2020 until November 2021—provided vague testimony suggesting Powell was treated differently based on her sex and race. Asked whether Powell was treated differently "on the basis of her being a female," Relf replied "[o]h, she was the only female for a long time." (Doc. 44-5 at 33.) He went on to seemingly imply Powell was given more assignments because she is female. (Doc. 44-5 at 33.) But Relf also said people told him Powell was getting more assignments because she was more experienced than the other drivers. (Doc. 44-5 at 33.) As to race, Relf testified he saw Powell being treated differently because she is Black "from the get-go" and that it was "kind of expected in that environment." (Doc. 44-5 at 34.) But when asked for specific examples or details, Relf provided no explanation of what he saw and said he "[n]ever heard anybody specifically call her out for her race." (Doc. 44-5 at 31–32, 34, 63.) It seems Relf believed Powell was micromanaged more than other employees, but he did not adequately connect that alleged treatment to her race or sex.

(Doc. 44-5 at 35.) Rather, he believed Powell was "singled out for sitting around, taking a day off" and men would not get asked why they were sitting around. (Doc. 44-5 at 64.) But he also acknowledged management "expected more out of Powell because she was one of their senior drivers and was one of, like, the first five to be hired[.]" (Doc. 44-5 at 64–65.)

These vague and conclusory statements do not create a genuine dispute of material fact as to whether Powell was discriminated against based on her race or sex. *See* Fed. R. Civ. P. 56(e)(2) ("[A]n opposing party may not rely merely on allegations or denials . . . ; rather, its response must . . . set out specific facts showing a genuine issue for trial."); *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 664 (9th Cir.1999) (holding "vague claims" cannot generate a factual dispute "adequate to defeat summary judgment").

The other piece of evidence that could conceivably support Powell's argument that Transdev's reasons for firing her were pretextual is a text message between Skelton and Najera that said Powell was not the right person for a special assignment "because she [i]s black." (Doc. 44-2 at 124.) Powell claimed in her deposition that Najera showed her the text message on his phone but acknowledged she had no evidence of it. (Docs. 44-2 at 125, 45 at 7.) Skelton did not recall sending Najera any text messages (Doc. 44-4 at 33), and Najera was not deposed. Powell oddly seems to claim she tried to obtain the text message by asking opposing counsel for *emails* between Skelton and Najera. (Doc. 45 at 7.) Regardless, this self-serving, conclusory testimony does not create a genuine issue of material fact allowing Powell to survive a motion for summary judgment. Rather, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997).

Powell also contests the basis for some of her RODs, presumably also in an attempt to suggest her termination was pretextual. (*See* Doc. 45 at 8–10.) But when evaluating whether an employer's "proffered justifications [for an adverse employment action] were 'false,' it is not important whether they were *objectively* false . . . Rather, courts 'only require that an employer honestly believed its reasons for its actions, even if its reason is

- 10 -

'foolish or trivial or even baseless.'" *Villiarimo*, 281 F.3d at 1063 (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001)). Powell has presented no evidence Transdev did not honestly believe its proffered reasons for firing her—her negative point balance and her poor performance. *See id.* (relying in part on the plaintiff having not presented evidence that the defendant "did not honestly believe its proffered reasons" for firing her in finding the plaintiff did not show her firing was pretextual). And Powell's self-assessment of her performance cannot establish pretext. *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660 (9th Cir. 2002), *as amended* (July 18, 2002)) ("We have held that an employee's own statement that he was performing at a level equal to that of other employees is not enough to raise a genuine issue of material fact.") (citation omitted).

Powell also claims to have demonstrated similarly-situated employees were treated more favorably than she was. *See Vasquez*, 349 F.3d at 641 ("A showing that the [defendant] treated similarly situated employees outside [plaintiff's] protected class more favorably would be probative of pretext."). She acknowledges that her only evidence regarding comparators comes from Relf's vague and conclusory testimony regarding how she was subjected to more work than some men. (Doc. 45 at 15 (citing Doc. 44-5 at 33).) But Relf acknowledged management told him Powell was getting more work because she was more experienced than the men. (Doc. 44-5 at 33.) More importantly, Powell was allegedly fired due to her disciplinary actions and poor performance, and she does not purport to have a comparator with a similar number of disciplinary actions or equally poor performance. An employee is not considered similarly situated if she "did not engage in problematic conduct of comparable seriousness to that of [the plaintiff]." *Id.*

There is no genuine dispute of material fact as to whether Powell was fired for her disciplinary actions and poor performance. Even if she had successfully established prima facie Title VII and ACRA sex and race discrimination claims, she has failed to show that Transdev's non-discriminatory reason for firing her was pretextual. Powell cites only vague and conclusory testimony to counter Transdev's motion for summary judgment,

which is insufficient. Transdev's motion for summary judgment on Powell's sex and race Title VII and ACRA claims is granted.

### B. Retaliation Claims

Powell brings two retaliation claims under Title VII and two under the AEPA. (Doc. 1 at 10, 11, 14, 15.) Because the analysis under both statutes is the same, these claims will be analyzed together. *See Zuniga v. Gowan Milling Co. LLC*, No. CV-21-00243-TUC-JCH, 2023 WL 6248700, at *12 (D. Ariz. Sept. 26, 2023) ("An AEPA retaliation claim uses the same framework as a Title VII retaliation claim." (citing *Whitmire v. Wal-Mart Stores Inc.*, 359 F. Supp. 3d 761, 796 (D. Ariz. 2019)), *aff'd*, 2025 WL 1500535 (9th Cir. May 27, 2025); *Spindle Inc. v. Voigt*, No. CV-14-00352-PHX-GMS, 2015 WL 12669896, at *2 (D. Ariz. Sept. 1, 2015) (applying Title VII standard to an AEPA claim).

The individual retaliation claims all appear to stem from the same allegations. Although far from clear, the complaint and response to the motion for summary judgment appear to allege retaliation due to Powell reporting the "tea bagged" comment and the inappropriate comedy sketch that was played on the breakroom television.[5] (*See* Doc. 45 at 8 (citing Doc. 45 23–24).) Powell seems to allege those two complaints led to retaliation against her in the form of disciplinary actions and eventual termination. (*See* Doc. 1 at 10, 11, 14, 15.)

In order to prevail on a retaliation claim, a plaintiff must show (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. *Vasquez*, 349 F.3d at 646. An adverse action for a retaliation claim is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and quotation marks omitted). A plaintiff must prove the protected activity was the "but-for" cause of the adverse employment action, meaning the action would not have occurred but for the

---

[5] To the extent Powell also claims she was fired because of an EEOC complaint she filed 21 days earlier, she provides no supporting evidence nor does she argue Transdev or those responsible for her termination were aware of that complaint. (Doc. 45 at 10–11.) That argument would therefore fail.

plaintiff's protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Even assuming Powell has met the first two elements of a retaliation claim, there is no genuine dispute of material fact that her protected activities—her HR complaints—were *not* the but-for cause for her disciplinary actions or ultimate termination, so her retaliation claims fail.

Powell advances no meaningful arguments in response to the motion for summary judgment regarding the cause of the retaliation she alleges. (*See* Doc. 45 at 8.) Nor does she supply any probative evidence for her claims other than attaching EEOC complaints describing the allegedly retaliatory incidents.[6] (*See* Doc. 45 at 8.) Piecing together Powell's complaint and response, it appears her sole evidence for retaliation is the temporal proximity between her two HR complaints and the disciplinary actions that followed, including her termination.

In some circumstances, temporal proximity can support a causal link between protected activity and an adverse employment action. *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 634 (9th Cir. 2014). But because this is the only evidence Powell proffers to support her retaliation claim, the proximity in time between her complaints, disciplinary actions, and termination must be "very close," *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam)), meaning the adverse employment action must "follow[ ] on the heels of protected activity." *Villiarimo*, 281 F.3d at 1065 (simplified). "[T]iming alone will not show causation in all cases; rather, in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression." *Id.* The adverse employment actions here were not sufficiently close in time to Powell's two HR complaints to support an inference of retaliation.

Powell cites one of her EEOC complaints as establishing the bases for her retaliation claim. (Doc. 45 at 8 (citing Doc. 45 23–24).) That complaint incorporates Powell's October 2021 and February 2022 HR complaints. (Doc. 45 at 23.) She appears to claim those

---

[6] Powell only cites one of these complaints in her response. (*See* Doc. 45 at 8 (citing Doc. 45 23–24).) She provides other purported supporting evidence too but does not meaningfully or persuasively explain its relevance. (*See* Doc. 45 at 28–33.)

- 13 -

complaints led to disciplinary action being taken against her in June and August 2022. (Doc. 45 at 23–24.) Powell also may be alleging her termination in September 2022 as an adverse action. (*See e.g.*, Doc. 1 at 15.) That means the time between Powell's HR complaints and adverse employment actions ranges from four to eleven months. This is too long a gap to show retaliation via temporal proximity. *See Kama v. Mayorkas*, 107 F.4th 1054, 1061 (9th Cir. 2024) (holding temporal proximity alone insufficient to show retaliation when an employee was fired 56 days after filing an Equal Employment Opportunity claim); *Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1020 (E.D. Cal. 2011) (holding nearly two months between protected activity and adverse employment action insufficient to support causation based on temporal proximity); *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 398–99 (7th Cir. 1999) (four months too long to establish temporal proximity).

Additionally, "an inference of causation based on temporal proximity is undermined or negated if intervening events are the reasons for the employer's adverse employment action." *Yphantides v. Cnty. of San Diego*, 660 F. Supp. 3d 935, 959 (S.D. Cal. 2023), *appeal dismissed*, No. 24-395, 2024 WL 3507758 (9th Cir. Mar. 7, 2024); *see also Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d 1011, 1026 (N.D. Cal. 2010) (an intervening event "negate[d] any inference that Plaintiff's complaint caused the subsequent adverse action"). Here, between Powell's two HR complaints and the first disciplinary action she alleges was retaliatory, she was issued an ROD for being tardy on two occasions. (Doc. 44-17 at 2.) Between her HR complaints and the second disciplinary action, she was disciplined five times. (*See* Doc. 44 at 8–10.) And between her two HR complaints and her termination, she was disciplined seven times and had a meeting regarding her subpar performance. (*See* Doc. 44 at 8–11.) Therefore, even if Powell had successfully argued there was sufficient temporal proximity between her protected actions and the adverse employment actions taken against her, that inference would be negated by intervening events. *See Yphantides*, 660 F. Supp. 3d at 959; *see also Kama*, 107 F.4th at 1061 (temporal proximity can cut both ways by supporting a plaintiff's inference of retaliation and a defendant's claimed

independent reason for terminating the plaintiff).

Powell also cannot establish but-for causation because she does not dispute Transdev's argument that the supervisors who disciplined and terminated her were unaware of her prior complaints. (Doc. 44 at 16.) She does not even address the argument, let alone provide evidence to counter the contention. (*See* Doc. 45 at 8.) Combing the record, the most Powell has is the testimony of one of her supervisors that she knew Powell complained to HR about something not being appropriate in a work setting, but that supervisor could not recall any details of the complaint or its surrounding circumstances (Doc. 44-6 at 38). *Cheeks v. Gen. Dynamics*, 22 F. Supp. 3d 1015, 1036 (D. Ariz. 2014), *order clarified*, No. CV-12-01543-PHX-JAT, 2014 WL 11514328 (D. Ariz. Nov. 18, 2014), *and aff'd in part sub nom. Cheeks v. Gen. Dynamics C4 Sys. Inc.*, 684 F. App'x 658 (9th Cir. 2017) (holding court could not reasonably infer but-for causation in the retaliation context based on employee's managers knowing of his workplace complaint because plaintiff "ha[d] not adduced any evidence that could lead to a reasonable inference that, at the relevant times," the managers knew of the complaint). For these reasons, Powell's retaliation claims fail.

**IV.   Conclusion**

Powell's Title VII and ACRA sex and race discrimination claims fail because Transdev proffered legitimate, non-discriminatory reasons for its decisions to discipline and terminate her and she did not show a genuine dispute of material fact related to whether those reasons were pretextual. Powell's Title VII and AEPA retaliation claims fail because she has not shown her protected activities were the but-for cause of the disciplinary actions taken against her or her termination.

/

/

/

/

/

Accordingly,

**IT IS ORDERED** Transdev's motion for summary judgment (Doc. 44) is granted.

**IT IS FURTHER ORDERED** the Clerk of Court is directed to enter judgment in favor of defendant and close this case.

Dated this 12th day of June, 2025.

*/s/ Krissa M. Lanham*
Honorable Krissa M. Lanham
United States District Judge